UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SEAN FLEMMING,

        Plaintiff,

      v.                                             **DECISION AND ORDER**
                                                                           19-CV-1009S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.        Plaintiff Sean Flemming brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits under Title II of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed his application with the Social Security Administration on May 13, 2016.  Plaintiff alleged disability beginning January 1, 2011, due to lumbar spine disorder (condition status post multiple surgeries) and coronary artery disease.  Plaintiff's application was denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

        3.        On August 29, 2018, ALJ Anthony Dziepak held a telephonic hearing at which Plaintiff—represented by counsel—and Vocational Expert Elaine Cogliano appeared and testified.  (R.[1] at 29-76.)  At the time of the hearing, Plaintiff was almost 51 years old, with a high school education and worked as a heating and air conditioning servicer, a skilled, medium exertion occupation performed at heavy exertional level (R. at 22 & n.1).

---

[1] Citations to the underlying administrative record are designated as "R."

4.      The ALJ considered the case *de novo* and, on November 9, 2018, issued a written decision denying Plaintiff's application for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.[2]  (Docket No. 1.)

5.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 6, 8.)  Plaintiff filed a response on March 6, 2020 (Docket No. 9), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is **granted**, and Defendant's motion is **denied**.

6.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[2] The ALJ's November 9, 2018, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

2

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-142 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the

3

>fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.   Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460 (1983).

11.   The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 31, 2011.  (R. at 17; see Docket No. 8-1, Def. Memo. at 16.)  At step two, the ALJ found that Plaintiff has the following severe impairment:  lumbar spine disorder (condition status post multiple surgeries) and coronary artery disease.  R. at 17-18.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 18.

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, Plaintiff could lift or carry up to 10 pounds occasionally; sit up to 6 hours in an 8-hour workday; and stand and walk for up to 2 hours in an 8-hour workday (R. at 18). Plaintiff could not climb ladders, ropes, or scaffolds; could not crawl or balance on wet, uneven, or vibrating surfaces; and could not be exposed to unprotected heights (R. at 18). Additionally, Plaintiff could not push, pull, or operate foot controls with the right lower extremity (foot); could not operate vibrating tools; could not work with heavy moving machinery (R. at 18). He could occasionally climb ramps and stairs and occasionally kneel and crouch; and needed a sit/stand option every half hour for one to two minutes at the workstation, remaining on task (R. at 18).

13. At step four, the ALJ found Plaintiff is unable to perform any past relevant work. (R. at 21.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, accepting the opinion of the vocational expert. Elaine Cogliano opined that a claimant similar to Plaintiff could perform such representative occupations as a packager, small parts assembler, and inspector, all sedentary work. (R. at 22-23.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 23.)

14. Plaintiff argues that the RFC determination is not supported by substantial evidence because ALJ failed to assign controlling weight to any medical opinion, hence relied upon his lay interpretation of the medical record, making highly specific RFC finding with sit and stand restrictions (Docket No. 6-1, Pl. Memo. at 1, 17-21, 21-23, 23-25; Docket No. 9, Pl. Reply Memo. at 4-6 (the ALJ made highly specific sit/stand findings in the RFC without substantial evidence to support them)). Plaintiff concludes that this error

is harmful because the ALJ's assessment formed the basis of the RFC and the factual predicates for the vocational expert's opinion (Docket No. 6-1, Pl. Memo. at 24-25). Plaintiff next contends the ALJ ignored six examining opinions of Dr. Guy Corkill (R. at 825 (IME, Nov. 20, 2011), 829 (Oct. 5, 2012), 833 (June 28, 2013), 837-38 (Feb. 19, 2014), 527-28 (Mar. 2, 2015), 522 (Sept. 30, 2015); Docket No. 6-1, Pl. Memo. at 15, 16, 1, 25-28; Docket No. 9, Pl. Reply Memo. at 7-9).

15. Defendant argues that substantial evidence supports the RFC (Docket No. 8-1, Def. Memo. at 17-19). The vocational expert's opinion supports the ALJ's decision (id. at 21-22), although that opinion is based upon the ALJ's findings in the RFC.

16. For the reasons that follow, Plaintiff's argument is **accepted**.

17. The ALJ found that Plaintiff's treatment history was inconsistent with his allegations of disabling symptoms, despite Plaintiff's numerous back surgeries (R. at 19).

18. The ALJ considered the treatment records where unnamed medical sources made disability findings at percentages of 75-100% (R. at 20, 211-73, 211 (Dr. P. Jeffrey Lewis, Jan. 4, 2012, Plaintiff was "very disabled"), 274-452, 633, 641), collectively giving them little weight because the disability percentages "provide little insight into the claimant's specific limitations" and Plaintiff's objective findings in 2016 differed little from 2015 (R. at 20). The ALJ thus relied upon the 2015 functional capacity evaluation of Mary Orrange, OTR (R. at 818) as "a valid assessment of claimant's limitations" subject to additional restrictions found by the ALJ (R. at 20). Orrange found Plaintiff was capable of performing light work despite ongoing lumbar symptoms (R. at 818, 20).

19. Plaintiff argues that the ALJ failed to assign controlling weight to any medical opinion, hence finding limitations based on lay interpretation (Docket No. 6-1, Pl.

6

is harmful because the ALJ's assessment formed the basis of the RFC and the factual predicates for the vocational expert's opinion (Docket No. 6-1, Pl. Memo. at 24-25). Plaintiff next contends the ALJ ignored six examining opinions of Dr. Guy Corkill (R. at 825 (IME, Nov. 20, 2011), 829 (Oct. 5, 2012), 833 (June 28, 2013), 837-38 (Feb. 19, 2014), 527-28 (Mar. 2, 2015), 522 (Sept. 30, 2015); Docket No. 6-1, Pl. Memo. at 15, 16, 1, 25-28; Docket No. 9, Pl. Reply Memo. at 7-9).

15. Defendant argues that substantial evidence supports the RFC (Docket No. 8-1, Def. Memo. at 17-19). The vocational expert's opinion supports the ALJ's decision (id. at 21-22), although that opinion is based upon the ALJ's findings in the RFC.

16. For the reasons that follow, Plaintiff's argument is **accepted**.

17. The ALJ found that Plaintiff's treatment history was inconsistent with his allegations of disabling symptoms, despite Plaintiff's numerous back surgeries (R. at 19).

18. The ALJ considered the treatment records where unnamed medical sources made disability findings at percentages of 75-100% (R. at 20, 211-73, 211 (Dr. P. Jeffrey Lewis, Jan. 4, 2012, Plaintiff was "very disabled"), 274-452, 633, 641), collectively giving them little weight because the disability percentages "provide little insight into the claimant's specific limitations" and Plaintiff's objective findings in 2016 differed little from 2015 (R. at 20). The ALJ thus relied upon the 2015 functional capacity evaluation of Mary Orrange, OTR (R. at 818) as "a valid assessment of claimant's limitations" subject to additional restrictions found by the ALJ (R. at 20). Orrange found Plaintiff was capable of performing light work despite ongoing lumbar symptoms (R. at 818, 20).

19. Plaintiff argues that the ALJ failed to assign controlling weight to any medical opinion, hence finding limitations based on lay interpretation (Docket No. 6-1, Pl.

Memo. at 18-19, citing Garcia Medina v. Comm'r, No. 17CV6793, 2019 WL 1230081 (W.D.N.Y. Mar. 15, 2019) (Feldman, Mag. J.)). Plaintiff finds it unclear how the ALJ determined the RFC "or why they did not go further" (Docket No. 6-1, Pl. Memo. at 19).

20. Plaintiff had three back surgeries during the insured period and failed conservative medical treatment and was on hydrocodone (id. at 20; R. at 221, 242, 255, 753, 512, 640, 771, 794). Plaintiff argues that his examinations "did not provide a specific explanation of Plaintiff's functional capacity for work" (Docket No. 6-1, Pl. Memo. at 20; see also Docket No. 9, Pl. Reply Memo. at 2). The ALJ, however, gave little weight to Plaintiff's treating sources because they were vague and did not outline Plaintiff's functional limitations (R. at 20).

21. Plaintiff next faults the ALJ for making specific findings in the RFC without a medical opinion or medical evidence supporting them (Docket No. 6-1, Pl. Memo. at 21). The record does not indicate the sit/stand restriction the ALJ later found (id. at 22).

22. Defendant responds that the ALJ properly discharged his duty to review the evidence and find Plaintiff's RFC (Docket No.8-1, Def. Memo. at 17-18). Defendant notes that the ALJ "included additional limitations to sedentary work with a sit/stand option and additional postural and environmental restrictions to account for potential symptoms exacerbation with increased activity and static positions," limiting Plaintiff to pushing and pulling and use of foot controls to account for radiating pain (id. at 18-19; R. at 20).

23. There is no basis, however, for the ALJ to impose the additional limitations. As Plaintiff concedes, the medical evidence did not indicate specific functional limitations (see Docket No. 9, Pl. Reply at 2). Although Defendant notes that evidence as a basis for the ALJ's finding (cf. Docket No. 8-1, Def. Memo. at 17), the ALJ gave only partial

7

weight to the medical opinions in the record.  Therefore, the limitations in the RFC can only arise from the ALJ's lay opinion of the medical evidence.  This Court has remanded where another ALJ did not rely upon a medical opinion and the medical record did not address how the impairments affected that claimant's ability to perform work, <u>Grace v. Berryhill</u>, No. 17CV1162, 2019 WL 2051649, at *3 (W.D.N.Y. May 9, 2019) (Schroeder, Mag. J.).  Remand is required when an ALJ discounts medical opinions and makes medical findings absent those opinions, <u>Winters v. Comm'r</u>, No. 18CV1049, 2020 WL 1061491, at *6 (W.D.N.Y. Mar. 5, 2020) (Larimer, J.); <u>Zak v. Saul</u>, No. 18CV724, 2020 WL 967031, at *9 (W.D.N.Y. Feb. 28, 2020) (Siragusa, J.); <u>Hillyard v. Comm'r</u>, 18CV370, 2020 WL 429136, at *5 (W.D.N.Y. Jan. 27, 2020) (Wolford, J.) (Docket No. 9, Pl. Reply Memo. at 3-4).

24.  Under the present record, Plaintiff's motion for judgment on this ground is **granted**.

25.  As for consideration of Dr. Corkill's opinions, Dr. Corkill performed internal medical examinations for Plaintiff's workers' compensation application in November 2011 through September 2015.  On November 14, 2011, Dr. Corkill restricted Plaintiff to not lifting over fifteen pounds, avoid repetitive lifting, bending, pushing, pulling, twisting, or stooping (R. at 826).  Dr. Corkill found that Plaintiff had lumbar range of motion reduced by 50% (R. at 827).  On October 5, 2012, Dr. Corkill opined that Plaintiff was partially and temporarily disabled (R. at 829) for workers' compensation purposes.  When examining Plaintiff again on June 28, 2013, Dr. Corkill found that Plaintiff was moderately to markedly disabled and restricted from lifting more than ten pounds (R. at 833-34).  On February 19, 2014, Dr. Corkill found that Plaintiff had a marked disability of 75%, limiting Plaintiff to

lifting five pounds and avoiding repetitive lifting (R. at 837, 838). When evaluating Plaintiff again on March 2, 2015, Dr. Corkill reasserted previous work limitations (R. at 527-28). On September 30, 2015, Dr. Corkill noted that Plaintiff walks with a right limp, markedly reduced lumbar range to 75% reduction in extension, right flexion, and rotation were also markedly impaired by 75% (R. at 522), concluding that Plaintiff could not return to work (R. at 522, 846). Dr. Corkill found that Plaintiff could not lift more than ten pounds (R. at 521, 845).

26. The ALJ compared Dr. Corkill collectively with other treating sources (without specifying Dr. Corkill by name) with the September 2015 findings of Ms. Orrange, giving Ms. Orrange's findings greater weight than to the "vague disability assessments from claimant's other providers during this period" (R. at 20), presumably including Dr. Corkill. Defendant thus argues that the ALJ did consider Dr. Corkill's opinions, finding that these opinions did not address specific functional abilities and were inconsistent with objective findings (Docket No. 8-1, Def. Memo. at 19, 19-21).

27. As stated above, Plaintiff concedes that the medical record, presumably including Dr. Corkill, lacks specific functional findings.

28. Upon remand, the ALJ could remedy this gap in the record of the lack of functional assessment by requesting the opinion of Dr. Corkill (among other medical sources) about Plaintiff's functional limitations given his spine disorder.

29. After carefully examining the administrative record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision. Plaintiff's Motion for Judgment on the Pleadings is therefore **granted**, and Defendant's Motion for Judgment on the Pleadings is **denied**.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this opinion.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:   August 14, 2020
         Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge